Charles Kinsey
<u>(Name)</u>
480 Alta Road
<u>(Address)</u>
San Diego, C.A. 92179
<u>(City, State, Zip)</u>
P04738
<u>(CDCR / Booking / BOP No.)</u>



# United States District Court
## Southern District of California

Charles Kinsey

_____
(Enter full name of plaintiff in this action.)

                            Plaintiff,

v.

Susan Pasha

_____,
_____,
_____,
_____,
(Enter full name of each defendant in this action.)

                            Defendant(s).

Civil Case No. <u>3:25-cv-1225-</u>
(To be supplied by Court Clerk) BEN-DDL

Complaint under the
Civil Rights Act
42 U.S.C. § 1983

## A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.

_____

## B. Parties

1. <u>Plaintiff</u>: This complaint alleges that the civil rights of Plaintiff, <u>Charles Kinsey</u>
                                                        (print Plaintiff's name)
_____, who presently resides at <u>480 Alta Road San Diego. CA</u>
                                                        (mailing address or place of confinement)
<u>92179</u>_____, were violated by the actions of

the below named individuals. The actions were directed against Plaintiff at <u>Donovan State</u>

<u>Prison</u>_____ on (dates) _____2020_____, and _____.
(institution/place where violation occurred)      (Count 1)      (Count 2)      (Count 3)

§ 1983 SD Form
(Rev. 3/15)

2. <u>Defendants</u>: (Attach same information on additional pages if you are naming more than 4 defendants.)

Defendant __Susan   Pasha_____ resides in ____San Diego_____,
                    (name)                                      (County of residence)
and is employed as a ____Nurse Practitioner_____. This defendant is sued in
                              (defendant's position/title (if any))
his/her ☒ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under

color of law: __as a employee of the prison the defendant had a duty to
Provide medical care that does not violate the constition._____
_____
_____.

Defendant _____ resides in _____,
                    (name)                                      (County of residence)
and is employed as a _____. This defendant is sued in
                              (defendant's position/title (if any))
his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under

color of law: _____
_____
_____.

Defendant _____ resides in _____,
                    (name)                                      (County of residence)
and is employed as a _____. This defendant is sued in
                              (defendant's position/title (if any))
his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under

color of law: _____
_____
_____.

Defendant _____ resides in _____,
                    (name)                                      (County of residence)
and is employed as a _____. This defendant is sued in
                              (defendant's position/title (if any))
his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under

color of law: _____
_____
_____.

C. Causes of Action (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

Count 1: The following civil right has been violated: _____

the right to medical care          (E.g., right to medical care, access to courts,

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, by name, did to violate the right alleged in Count 1.]

plaintiff allegess he is visually impaired and as a ADA class m member was transfered to the Donovan state prison. At the time the prison was undergoing renovations to become ADA compliant and was not yet safe for ADA inmates. Defendant alleges that defendant knew that the path to the education department was on extreme unevan terrain. Defendant Pasha has recently responded to a injury in that very department, and the injured party was using a walker. The defendant commented to a fellow nurse that the path was a fall waiting to happen. The defendant has treated people in the past with serious injury from falling on the path. Two of the past victims of the path were treated by the defendant. When encounered by Pasha she asked about any COVID-19 symptoms. The plaintiff was in the presence of other incarcerated person and exersized his right to move to a privite location. The defendant refused and treated the refusal to awnser as a refusal of care. Then in retailation for exersizing the right to a privite medical care that can not be overheard by other persons, then defendant discontinued my accomdation of my wheelchair. I asked how i would get around and was provided a walker and the defendant said that the walker was good enough. The walker had small wheels that could get caught in the cracks. The defendant was unqulified to take my wheelchair and the plainfiff told the defendant so. The defendant responded " "since you think I am unqualified to treat you I will take the chair until the doctor can see you". The defendant was asked by the plaintiff how the plaintiff could get to education department without the wheel chair. The responce was: "If you fall you can

1. put in a sick call slip and maybe you will bee seen."
2. The above comments show two elements to my claim. First the words "
3. "if you fall" show the defendant knew and actually drew the infrence
4. that injury could result form the defendants actions. Second the words
5. "maybe you will see the doctor" show that the defendants actions could
6. bring about injury serious enough to need a doctor.
7.
8. The plaintiff did in fact thereafter fall and broke the finger at
9. issue in this case.
10. (Exhibit A) ⟦Medical records that explain the injury⟧
11. I request that the court take notice of the records and deem them
12. incorpoated herein.
13. Defendant Pasha then was assigned to screen plaintiff for the broken
14. finger.Instead of providing care and respond to plaintiffs medical
15. needss the defendant failed to respond and inproperly set the finger.
16. As a result of the defendants action and/or inaction the plaintiff
17. had to go to sergury and have the finger reset. This caused further
18. pain and suffering. The finger still does not have the range of motion
19. that is normal for a adult male. That is the harm caused by the
20. indifferance.
21.
22.
23.
24.
25.
26.
27.
28.

Count 2:  The following civil right has been violated: _____

_____(E.g., right to medical care, access to courts,

_____.
due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts:   [Include all facts you consider important to Count 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 2.]

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Count 3:  The following civil right has been violated:_____

_____(E.g., right to medical care, access to courts,

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts:  [Include all facts you consider important to Count 3. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 3.]

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

D. Previous Lawsuits and Administrative Relief

1. Have you filed other lawsuits in state or federal courts dealing with the same or similar facts involved in this case?  ☐ Yes  ☒ No.

If your answer is "Yes", describe each suit in the space below.  [If more than one, attach additional pages providing the same information as below.]

(a)  Parties to the previous lawsuit:
Plaintiffs: _____

Defendants: _____

(b)  Name of the court and docket number: _____

_____.

(c)  Disposition: [ For example, was the case dismissed, appealed, or still pending?] _____

_____.

(d)  Issues raised: _____

_____

_____

_____

_____.

(e)  Approximate date case was filed: _____.

(f)  Approximate date of disposition: _____.

2. Have you previously sought and exhausted all forms of available relief from the proper administrative officials regarding the acts alleged in Part C above? [E.g., CDCR Inmate/Parolee Appeal Form 602, etc.] ? ☒ Yes  ☐ No.

If your answer is "Yes", briefly describe how relief was sought and the results.  If your answer is "No", briefly explain why administrative relief was not exhausted.

Appeal for the removal of the wheelchair and care after the fall
was appealed to the highest level.

_____

_____

_____

_____

_____.

E.  Request for Relief

Plaintiff requests that this Court grant the following relief:

      1. An injunction preventing defendant(s):

from interfearing with the
litagation of this case

Order preecludion of interdepartmal transfer.

      2. Damages in the sum of $ 500,000 .

      3. Punitive damages in the sum of $ 625,000 .

      4. Other: any other releif the court deems just and proper

F. Demand for Jury Trial

Plaintiff demands a trial by x ☒ Jury ☐ Court.  (Choose one.)

10-15-2025

Date

*Charles A. Kinsey*

Signature of Plaintiff

Kinsey, Charles (MRN 106746147) Printed by Kelly Donahue, RN [124784] at 9/18/20 9:06 AM

# Kinsey, Charles

MRN: 106746147

**Eric P Hofmeister, MD**
Physician
Orthopedic Surgery

Interval H&P Note
Signed

Date of Service: 9/18/2020  7:09 AM

H&P reviewed. The patient was examined and there are no changes to the H&P.

# Kinsey, Charles

MRN: 106746147

**Eric P Hofmeister, MD**
Physician
Orthopedics

H&P (View-Only)
Signed

Date of Service: 9/14/2020  2:24 PM

### Orthopedic Hand Surgery H&P

**Name:** Charles Kinsey
**DOB:** 2/1/1960

**MRN:** 106746147
**Age:** 60 y.o.

**CDCR:** P04738

**CONSULTING PHYSICIAN:** Eric P Hofmeister, MD
**DATE OF CONSULT:** 6/23/2020

**REASON FOR CONSULT:**
Follow up evaluation for left long finger mallet

**HISTORY OF PRESENT ILLNESS:**
The patient is a 60 y.o. male who presents for initial consult via telemedicine for left long finger pain after jamming injury on April 10, 2020 initially was splinted intermittently, but more recently has been placed into a long finger splint that he has been wearing most of the time.. Patient relates history of he had a similar injury to this of his left index finger several years ago.  No neuro symptoms. No improvement with mild analgesics and modification of activities.    Unfortunately, he was not placed into a stack splint but instead has a curved plastic immobilization to his finger for some flexion at the distal interphalangeal joint he continues to complain of lack of full ability to extend, along with ongoing pain of 7-1/2 out of 10 to the digit

**PAST MEDICAL HISTORY:**
Blindness in right eye
Glaucoma
Hepatitis C
Peroneal tendinitis, left
Pain in right leg

**PAST SURGICAL HISTORY:**
Intramedullary nail of tibia

**FAMILY HISTORY:**

Kinsey, Charles (MRN 106746147) Printed by Kelly Donahue, RN [124784] at 9/18/20 9:06 AM

Reviewed

**SOCIAL HISTORY:**
Reviewed
Currently an inmate at RJ Donovan correctional facility

**CURRENT MEDICATIONS:**
Sumatriptan
Latanoprost
Emcin alone
Artificial tears

**ALLERGIES:**
Acetaminophen

**REVIEW OF SYSTEMS** (Complete=10 or more; Extended=2-9; Problem pertinent=1)
A 10 system review was obtained and reviewed by the examiner. Pertinent findings are noted:
Noted per current HPI only

**PHYSICAL EXAMINATION:** (Comprehensive=8 or more organ systems; Detailed=5-7;
Expanded Problem Focused=2-4; Problem focused=1)

**VITAL SIGNS:**
BP: 108/73
Heart rate: 67
Respirations: 14
Temp: 96.8 °F
O2 sat on room air: 98%
Weight: 196 pounds, 5 foot 10 inches tall

**General:** Well developed in no acute distress. Alert and oriented.
**Gait:** Ambulating without any assistive device
**Splint:** Left long finger splint in place
**HEENT:** Atraumatic, EMI intact
**Lungs:** Unlabored breathing, clear no wheezes
**Cardiovascular:** 2+ pulses brisk capillary refill
**Skin:** No drainage or erythema. No ecchymosis or hematomas
**Neurologic:** Sensation to light touch intact
**Lymph:** No adenopathy noted

**FOCUSED ORTHOPEDIC PHYSICAL EXAMINATION:**
A focused physical examination was performed remotely via telemedicine employing the
attendant RN. The findings are recorded below.

*WRIST AND HAND EXAMINATION*

INSPECTION:
No deformity. No masses. No discoloration. No rash. No wound(s). No scars.

PALPATION:
No bony tenderness. No soft tissue tenderness. No crepitance. No masses. No fluctuance.

RANGE OF MOTION:

Kinsey, Charles (MRN 106746147) Printed by Kelly Donahue, RN [124784] at 9/18/20 9:06 AM

Wrist flexion (avg nl 80 deg): 80
Wrist extension (avg nl 90 deg): 90
Wrist ulnar deviation (avg nl 30 deg): 30
Wrist radial deviation (avg nl 20 deg): 20
Fingers MCP flexion (avg nl 90 deg): 90
Fingers MCP extension (avg nl 30-45 deg): 30
Fingers abduction (avg nl 20 deg): 20
Fingers adduction (avg nl 0 deg) straight): 0
Thumb abduction (avg nl 70 deg): 70
Thumb adduction (avg nl 0 deg): 0
Fingers opposition: thumb touching each finger tip

SENSATION: Intact all dermatomes and nerve distributions.

MOTOR STRENGTH:
Wrist flexion: 5/5
Wrist extension: 5/5

VASCULARITY:
Radial pulse: intact

SPECIAL TESTS (carpal tunnel syndrome):
*Tinel* test: Negative for pain or paresthesias in median nerve distribution with tapping volar carpal ligament.
*Phalen* test: Negative for pain or paresthesias in median nerve distribution with sustained maximum wrist flexion.

SPECIAL TEST (*DeQuervain* tenosynovitis)
*Finkelstein* test: Negative for pain around first dorsal compartment with wrist ulnar deviation with thumb tucked into fist.

FINGER EXAMINATION

INSPECTION:
Left long finger with flexion deformity at distal interphalangeal joint. No masses. No discoloration. No rash. No wound. No scars.

PALPATION:
No bony tenderness At distal interphalangeal joint of left long finger. No soft tissue tenderness. No crepitance. No masses. No fluctuance.

RANGE OF MOTION:
MCPj flexion (avg nl 90 deg): 90
MCPj extension (avg nl 30 deg hyperextension): 30
PIPj flexion (avg nl 100 deg): 100
PIPj extension (avg nl 0 deg): 0
DIPj flexion (avg nl 60 deg): 60
DIPj extension (avg nl 0-10 deg): 0 except left long finger has a 20 degree extensor lag

SENSATION: Intact.

MOTOR STRENGTH:
MCPj flexion (lumbricals, FDP, FDS): 5/5
MCPj extension (EDC, EI, EDM): 5/5

PIPj flexion (FDS): 5/5
PIPj extension (EDC, EI, EDM): 5/5
DIPj flexion (FDP): 5/5
DIPj extension (EDC, EI, EDM): 5/5

VASCULARITY: Capillary refill <2s.

SPECIAL TESTS:
Trigger finger: Negative for locking, popping, or catching with flexion/extension of digit.

## LABORATORY DATA
Reviewed

## STUDIES
Radiographs from 4/30/2020 are reviewed which show a dorsal distal interphalangeal joint fracture with 50 degree flexion deformity at the distal interphalangeal joint

Radiographs from 6/18/2020 show a dorsal distal interphalangeal joint fracture without any evidence of healing, slight volar joint subluxation, fracture fragment displacement

## ASSESSMENT:
Left long finger mallet fracture, S 62.609D

## PLAN:
The results of the history of present illness, telemedical clinical examination, and imaging studies were discussed with the patient. The provisional diagnosis(es) and treatment options were discussed in detail, and the patient verbalized understanding. The plan is as follows:
1. Discussion and education regarding diagnosis(es) and management.
2. Continued use of analgesics and modification of activities.
3. Recommend he be fitted with a stack splint that holds the distal interphalangeal joint in slight hyperextension. I counseled the patient that he needs to keep the finger extended 100% of the time, 24/7. 2 fracture displacement and subluxation of the joint, I had a long discussion with him on operative treatment for his finger to include a closed reduction and percutaneous fixation, CPT 26756, 64450. This would require 45 minutes of operating room time, equipment needed include a C arm, power, 0.045 inch K wires
I discussed with him the risk, benefits, alternative treatments, and expected outcomes of surgery, risk include but not limited to pain, bleeding, infection, concerns about having a sharp K wire fixation within the prison system, him just living with it, lack of flexion or extension, skin necrosis, and anesthetic complications. He was complete understanding and desires to proceed.
4. Schedule follow-up appointment in approximately 4 weeks, however if he proceeds with surgery, I will see him on the day of surgery

Author: Eric P Hofmeister, MD
Orthopedic Hand Surgeon

# Kinsey, Charles

MRN: 106746147

Eric P Hofmeister, MD
Physician
Orthopedics

Op Note
Signed

Date of Service: 9/18/2020  7:27 AM

Procedure: **Left long finger closed reduction and pinning (place sharp wires into the bone)**

Case Time: **9/18/2020** 7:27 AM

Surgeon: **Eric P Hofmeister, MD**

## LT LONG FINGER MALLET CLSD RDCTN, PERC FIXATION (DON) CARM, .045 KWIRE
## Procedure Note

**Name:** Charles Kinsey
**DOB:** 2/1/1960
**Sex:** male

**MRN:** 106746147
**Age:** 60 y.o.

**Account Number:**
726000102994

**Date of Procedure:**
9/18/2020

**Preoperative Diagnosis:**
LT FINGER DEFORMITY
OP, CDCR (DON) 26756. 64450

**Postoperative Diagnosis:**
Left long finger distal phalanx nonunion

**Procedure:**
Procedure(s):
LT LONG FINGER MALLET CLSD RDCTN, PERC FIXATION (DON) CARM,  .045 KWIRE,
CPT 26756
Left long finger radial and ulnar digital nerve, dorsal cutaneous nerve block by surgeon, CPT
64450

**Surgeon:**
Surgeon(s) and Role:
   * Eric P Hofmeister, MD - Primary

**Anesthesia Staff:**
Anesthesiologist: Monique A Tu, DO

**Anesthesia Type:**
Monitor Anesthesia Care

**Procedure Details:**

Patient was met in the holding area, all questions were answered, and he desired to proceed, consent was confirmed.  The operative site was marked and confirmed both by the patient myself.

He is been taken back to the main operating room at Alvarado Hospital, positioned supine position, all bony prominences were well-padded.  Heavy MAC was provided and and after our surgical timeout with confirmation of the patient, site, procedure, and the infusion of IV antibiotics, the left long finger was sterilely prepped and a peripheral nerve block was then performed by myself, blocking the radial ulnar digital nerves to the left long finger and a dorsal cutaneous block.  The left upper extremity was then had a secondary surgical prep and drape and a second surgical timeout was confirmed.  A finger tourniquet was then placed, and a vigorous closed reduction was performed under fluoroscopy.  It was noted that the distal phalanx was still ununited and he had a nonunion of the dorsal proximal distal phalanx of the left long finger.  The distal interphalangeal joint was then maximally flexed and a 0.045 inch K wire was placed dorsally as a backstop to the fragment and placed into the head of the middle phalanx.  2 additional K wires were placed I do to the amount of force required to reduce the fracture and distal interphalangeal joint subluxation with ultimately the first pin being removed.  Next a 0.045 inch K wire was introduced to the tip of the finger across the distal interphalangeal joint locking the construct in place and with the distal interphalangeal joint in full extension/slight hyperextension.  Intraoperative fluoroscopy confirmed excellent placement of hardware and no motion at the distal interphalangeal joint or fracture.  The pins were cut short and pin protectors were placed.  Final intraoperative fluoroscopy confirmed our reduction and pin placement.  Upon removal of the tourniquet he had brisk cap refill to his digits.  Xeroform was placed around the pin sites followed by a finger extension splint and Coban.  He was then taken to the postoperative care unit in stable condition.  Upon removal of the tourniquet he had brisk cap refill to his digits.

**Findings:**
Unit of the dorsal proximal portion of the distal phalanx left long finger

**Specimens:**
None

**Tourniquet time:**
18 minutes of a finger digital tourniquet

**Implants:**
0.045 inch K wires x2, 0.054 inch K wire x1

**Estimated Blood Loss:**
Minimal

**Complications:**
None

**Author:** Eric P Hofmeister, MD

Clerk of US District Court,

1968?

"Original on top / Highlighters"

Note stamp adhere to copy made with original

Clerk of the US District Court

Please provide me with the courts stamp once documents is filed

Thank you

Charles Kevin



CHARLES KINSEY
RJD CORRECTIONAL facility
480 ALta Rd. C12-124
San Diego CA 92179

$003.00 US POSTAGE

California Department of
Corrections and Rehabilitation

RECEIVED
OCT 30 2025
DIST COURT
DIST OF CALIFORNIA

CLerK of U.S. District Court
333 West Broadway, Suite 420
San Diego, CALifornia 92101

Confidential "Legal" mail
Cdcr 3141(a) - 3142(a)(b)(c)(d)
c/o "Signature" Date   c/o Badge No.

